UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

YOLANDA DELGADO,

    *Plaintiff,*

v.                              Case No.

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY, a
foreign not-for-profit corporation,
d/b/a GOOD SAMARITAN
SOCIETY – KISSIMMEE VILLAGE;
SANFORD HEALTH, a foreign not-
for-profit corporation.

    *Defendant.*

                                  /

_____

## **COMPLAINT**
## **AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, YOLANDA DELGADO, by and through her undersigned counsel, sues the Defendants, THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, d/b/a GOOD SAMARITAN SOCIETY – KISSIMMEE VILLAGE and SANFORD HEALTH, and seeks declaratory and injunctive relief as well as compensatory damages, punitive damages, and attorneys' fees and costs. Specifically, Plaintiff alleges as follows:

1

## JURISDICTIONAL ALLEGATIONS

1.     This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of national origin in the rental of housing pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq., and exploitation of a vulnerable adult as defined by Fla. Stat. § 415.102(28). Plaintiff also seeks declaratory relief to invalidate an unenforceable release of all claims pursuant to 28 U.S.C. § 2201(a). Defendants, the owners, managers, and/or employees of a residential campus, discriminated against Plaintiff by wrongfully requiring her to surrender her housing rights through coercion and interfered with Plaintiff's exercise and enjoyment of her Fair Housing rights. Defendants also intentionally discriminated against Plaintiff, a Limited English Proficient person, by failing to provide appropriate language translation services in violation of the federal Fair Housing Act.

2.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 3613 because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. §3601 et seq. ("the FHA") and under 28 U.S.C. § 2201 for declaratory relief.

3.     Venue is proper in the Middle District of Florida, Orlando Division, under 28 U.S.C. § 1391(b) because the claim arose in Osceola County, which is in this Court's judicial district.

4.     Plaintiff YOLANDA DELGADO ("DELGADO") is a resident of the State of Florida and is otherwise sui juris.  DELGADO currently resides in Osceola County, Florida.

5.     Defendant, THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, a not-for-profit corporation which owns and operates a senior living community operating under the fictious name of GOOD SAMARITAN SOCIETY – KISSIMMEE VILLAGE ("GOOD SAM") with a business address of 1543 Aldersgate Drive, Kissimmee, Florida 34746. Defendant, SANFORD HEALTH ("SANFORD HEALTH"), is a not-for-profit corporation operating in South Dakota located at 1305 W. 18th Street, Sioux Falls, SD 57105.

## PARTIES

6.     Plaintiff DELGADO is a person living in Kissimmee, Florida.

7.     Defendant GOOD SAM is a non-profit corporation formed in North Dakota, has its principal office in South Dakota, and is authorized to do business in Florida.  GOOD SAM is a "dwelling" within the meaning of 42 U.S.C. § 3602(b). GOOD SAM operates, manages, and is in control of a variety of affordable housing options for seniors on its campus including apartments and villas for rent, and manufactured homes for purchase.

8.     Defendant, SANFORD HEALTH is a South Dakota non-profit corporation and upon information and belief is the parent company of GOOD SAM.

## FACTUAL BACKGROUND

9.     DELGADO is a senior, a native Spanish speaker from Puerto Rico, and is limited English proficient ("LEP").  She entered into a lease agreement with GOOD SAM on or about November of 2017 and has resided in Birchwood Court, a neighborhood within GOOD SAM, since entering that agreement.  DELGADO paid a security deposit at or around the time she entered the lease agreement.

10.     Widespread flooding previously occurred at GOOD SAM after Hurricane Irma ("Irma") hit the property in September of 2017, which occurred prior to the beginning of DELGADO's tenancy at the property.  Irma caused significant damage and resident displacement at GOOD SAM, as its wastewater-treatment facility failed and sent gallons of toxic wastewater into units previously occupied by senior residents.

11.     In the aftermath of Irma's destruction, GOOD SAM vowed to take significant steps to improve the community's ability to withstand natural disasters and mitigate future flooding by creating a $50 million plan that included a request for $3.5 million in state funds and $2.5 million in federal funds from the Federal Emergency Management Agency ("FEMA").

*Hurricane Ian*

12.     DELGADO evacuated GOOD SAM on or about September 27, 2022, in anticipation of Hurricane Ian's ("Ian") landfall.

13.     On or about September 28, 2022, Ian made landfall in Florida.  Ian caused extensive flooding at GOOD SAM, similar to what occurred after Irma in 2017.

14.     On September 30, 2022, Osceola County declared a mandatory evacuation for GOOD SAM due to potentially unsafe conditions.   During this mandatory evacuation period, GOOD SAM residents were prevented from entering their homes, and, thereby, unable to assess damage to the units and any personal belongings contained therein.

15.     After learning on a televised news program that residents were able to re-enter their housing at GOOD SAM, DELGADO returned with her daughter, Magaly Gutierrez, ("Gutierrez") to access her unit on or about October 15, 2022. Upon arrival, they found blue tape on the door that read "Air MD No Access." (See attached Exhibit "A"). DELGADO was never informed by GOOD SAM as to what this message meant.

16.     DELGADO opened the door to her unit and found that all of her belongings, furniture, and personal effects acquired over the seventy-seven years of her life were damaged beyond repair.  DELGADO was unable to recover any of

her possessions within the unit, leaving her emotionally distraught and in a state of extreme emotional distress.

*Good Sam Unlawfully Terminates Delgado's Tenancy*

17.     The same day DELGADO returned to her unit after Ian, an unknown woman told Gutierrez that DELGADO should go to the Friendship Room, a common area known to GOOD SAM residents.

18.     DELGADO, unaware of the reason for going to the Friendship Room, accompanied Gutierrez where they were seated at a table with Rhona Snyder ("Snyder"), an agent for GOOD SAM.

19.     Snyder stated in English that DELGADO was required to sign paperwork in order to receive the return of her security deposit. Snyder did not address DELGADO in her native Spanish or otherwise attempt to communicate directly with DELGADO.

20.     Snyder failed to inform DELGADO that she would be otherwise entitled to her security deposit under Chapter 83 of the Florida Statutes without having to sign the offered paperwork.

21.     Snyder stated in English that DELGADO was required to move her belongings from the unit by October 31, 2022, at which time it would be locked without further means of access by DELGADO.  In providing DELGADO a little over two weeks to remove her belongings from a unit which GOOD SAM

previously deemed as "no access," GOOD SAM created an unnecessary sense of urgency which further exacerbated DELGADO's heightened emotional distress.

22.     Snyder gave DELGADO a document written in English, titled "Termination of Occupancy Agreement and Abandonment of Personal Property Agreement" ("Termination").   Snyder provided the Termination, which was photocopied on the front and back of one sheet of paper, to DELGADO with only the second side visible to DELGADO.   The Termination stated that DELGADO had until October 31, 2022, to remove all property from the Unit, at DELGADO's "sole cost and expense." (See attached Exhibit "B").

23.     DELGADO was never informed by GOOD SAM that the untranslated Termination, unable to be reviewed by DELGADO, contained an unconscionably broad and sweeping release in which only the resident agrees to release GOOD SAM and its agents from:

> [A]ll claims, all manner of action and actions, cause and causes of action, type of actions, suit, debts, obligations, accounts, attorney's fees, costs, interest, dues, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages or claims and demands whatsoever, in law or in equity . . . from the beginning of the world to the date of this Agreement . . . .

24.     Snyder did not provide DELGADO an accompanying translation of the Termination into Spanish, DELGADO'S primary language.   The Termination contains the signature of a witness, Tamara Lund; however, no third party was present to witness DELGADO signing the Termination.

25.    GOOD SAM advertises its nondiscrimination policy promising free language services to individuals whose primary language is not English.  (See attached Exhibit "C").  GOOD SAM incorporates its nondiscrimination policy into its standard lease by way of an addendum detailing its resident grievance procedure.  The addendum outlines the procedure for grievances based on discrimination and quotes the language of its nondiscrimination policy to indicate that GOOD SAM provides "[f]ree language services to people whose primary language is not English, such as *qualified interpreters.*" (emphasis added).

26.    In violation of its own policy and grievance procedure incorporated into resident leases, GOOD SAM never offered a Spanish translator to DELGADO. No additional explanation of the Termination was provided in a language DELGADO could understand.  DELGADO was also not provided additional time to review the Termination or consult with an attorney.

27.    Due to the lack of translation services, Gutierrez inquired of GOOD SAM staff as to what would occur if DELGADO did not sign the Termination. GOOD SAM staff stated that any tenants who refused to sign the Termination would receive their security deposit months later but did not provide a fixed date by which DELGADO could expect the return of her security deposit.

28.    No consideration was offered to DELGADO in exchange for DELGADO's release of GOOD SAM. The Termination also does not include a

8

reciprocal release by GOOD SAM from any future claims it may have against DELGADO.

29.    DELGADO was not provided meaningful opportunity to review the Termination as GOOD SAM staff coerced DELGADO's signature.  DELGADO was under extreme emotional distress after having discovered that same day, and shortly before signing the untranslated Termination, she had lost all of her belongings.

30.    GOOD SAM materially misrepresented the overall nature of the Termination to DELGADO, who identifies as LEP, during a time of extreme emotional distress in an effort to improperly terminate DELGADO's lease agreement.

31.    Despite publicly stated intentions to assist its displaced residents in a time of need, GOOD SAM, under the pretext of returning security deposits, used the Termination to exploit DELGADO's vulnerable position as an opportunity to shield itself from liability.

32.    GOOD SAM'S coercion and intimidation interfered with DELGADO'S enjoyment and exercise of her housing rights by discriminating against her on the basis of her national origin to force an involuntarily surrender of her housing rights, limit her ability to exercise future housing rights, and unlawfully eliminate her ability to bring future claims against GOOD SAM.

## CLAIMS FOR RELIEF

### Count 1 – Violations of the Federal Fair Housing Act

33.    The allegations in Paragraphs 1-32 are incorporated herein by reference.

34.    GOOD SAM engaged in conduct in violation of the FHA to include, but not limited to:

a.   Discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of national origin, in violation of the FHA, 42 U.S.C. § 3604(b).

    i.   GOOD SAM discriminated against DELGADO in the terms, conditions, and privileges of her rental by failing to provide oral or written translation services when GOOD SAM made statements regarding her tenancy to DELGADO in English in contravention of GOOD SAM's advertised policy and lease addendum to offer translation services to residents whose primary language is not English.

    ii.   In failing to provide translation services to DELGADO and creating discriminatory conditions to exact her signature during a time of intense emotional distress, GOOD SAM forced

DELGADO to unwittingly take adverse action against her own housing rights.

b. Coercion, intimidation, and interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged other persons in the exercise or enjoyment of, any right granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

   i. DELGADO, under duress, confused, and vulnerable as a result of Ian, was not provided meaningful opportunity to review the Termination, as she was not able to speak with a person in her native language, including legal counsel, regarding its contents as GOOD SAM staff coerced DELGADO's signature.

   ii. GOOD SAM made material misrepresentations in English that DELGADO was required to sign paperwork in order to receive the return of her security deposit. GOOD SAM failed to tell DELGADO she would be otherwise entitled to her security deposit under Chapter 83 of the Florida Statutes without having to agree to the unconscionably and sweeping release language.

  iii. GOOD SAM intimidated DELGADO during the height of her emotional distress by rushing her to sign the untranslated Termination through continued oral instruction to sign in a language she does not speak proficiently.

35. As a result of GOOD SAM's actions described above, DELGADO suffered, and continues to suffer, irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, lost housing opportunity, and a deprivation of her rights to equal housing opportunities regardless of national origin.

36. After the coercive termination of her affordable housing by GOOD SAM, DELGADO was forced to live in less than ideal housing which placed a greater emotional, physical and financial burden on DELGADO. DELGADO, who does not drive, could only find more expensive housing located at a further distance from places she must frequently visit, including medical providers' offices and grocery stores. Additionally, the transportation to off-site locations, like medical offices and grocery stores, previously provided by GOOD SAM is not included in DELGADO'S new housing. DELGADO and her family must now coordinate transportation to medical appointments and to complete errands, which places a greater logistical and financial burden on them. DELGADO also feels more socially isolated as GOOD SAM provided myriad social opportunities

for residents within their campus that are not available to DELGADO in her current housing.

37.    GOOD SAM acted intentionally, willfully, and in disregard for the rights of DELGADO.

38.    DELGADO has been a victim of GOOD SAM's discriminatory conduct and is an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i) as she has been injured by Defendants' discriminatory housing practices.

### Count 2 – Declaratory Relief

39.    Plaintiff realleges Paragraphs 1-38 and reincorporates them by reference.

40.    This is a count seeking declaratory relief against GOOD SAM pursuant to 28 U.S.C. § 2201(a), and alleges as follows:

    a. After returning to the property on or about October 15, 2022, DELGADO and her daughter met with Snyder, an agent of GOOD SAM.

    b. Snyder stated in English that DELGADO was required to sign paperwork in order to receive the return of her security deposit. No additional explanation of the paperwork was provided to DELGADO.

c. Snyder deceptively provided the two-sided Termination to DELGADO with only the second side visible, obscuring the title of the Termination from DELGADO.  The Termination presented to DELGADO was a general release of liability in favor of GOOD SAM written in English.

d. GOOD SAM used deceptive tactics to convince DELGADO the only way to get her security deposit back was to surrender all her rights against GOOD SAM. Snyder failed to tell DELGADO that she would be otherwise entitled to her security deposit under Florida Statute 83.49(3) without having to sign the Termination.

e. No consideration was offered to DELGADO in exchange for DELGADO's release of GOOD SAM. The Termination does not include a reciprocal release by GOOD SAM from any future claims it may have against DELGADO.  The only purpose of the Termination is a pretextual offer of return of the security deposit in an effort to shield GOOD SAM from liability and improperly terminate DELGADO's existing lease agreement.

41.    Based on the foregoing, DELGADO is entitled to a declaration that the Termination is rescinded and void *ab initio* as it lacked valid consideration in

that GOOD SAM offered as consideration the performance of its pre-existing legal obligation to return DELGADO's security deposit under Florida law.

### Count 3 – Exploitation of a Vulnerable Adult

42.      Plaintiff realleges paragraphs 1-41 above and reincorporates them by reference.

43.      DELGADO is a vulnerable adult as defined by Florida Statutes 415.102(28) and was in a particularly vulnerable state in the several weeks following Ian.

44.      GOOD SAM exploited DELGADO's vulnerability, to wit:

a.   GOOD SAM coerced DELGADO into signing the Termination complete with a liability release under the false premise that signing the Termination was necessary for DELGADO to receive her security deposit back. GOOD SAM did so even though GOOD SAM was already required by law to return the deposit.

b.   GOOD SAM required signature on the Termination from DELGADO knowing she was in a vulnerable state having witnessed her lifelong possessions destroyed, her housing gone. At the time DELGADO was facing the reality of possible homelessness, a loss of community, and meeting with Snyder in a frantic and uncomfortable environment.

     c.  DELGADO justifiably relied on the representations by Snyder, agent for GOOD SAM, that the Termination was required in order to receive her security deposit return.

45.    A fiduciary relationship existed between the parties as GOOD SAM marketed their property to older adults who are more likely to experience cognitive decline and issues with memory. GOOD SAM had a responsibility to exercise reasonable care for its residents, especially while their residents were under the immediate stress of having lost their possessions and housing.  GOOD SAM was also in a fiduciary relationship with DELGADO as they were in possession of DELGADO'S security deposit.  GOOD SAM understood this was money DELGADO would need to secure future housing, and only offered to return it in exchange for her signature on the Termination, despite GOOD SAM's legal obligation to otherwise return it.

46.    Utilizing the exploitative nature of the circumstances, GOOD SAM attempted to further exploit DELGADO by relying on the one-sided Termination to pretextually alter the terms of her existing lease agreement and shield themselves from liability.

47.    As a direct and proximate result of the above-mentioned wrongful conduct, DELGADO has suffered and continues to suffer humiliation, embarrassment, and emotional distress. As such DELGADO requests reasonable

attorney fees, costs of the action, and damages, both actual and punitive damages for GOOD SAM's wrongful conduct.

### Prayer for Relief

**WHEREFORE,** Plaintiff respectfully requests that this Court:

    a.  Assume jurisdiction of this action; and

    b.  Declare GOOD SAM's actions complained herein to be in violation of the Fair Housing Act, Title VIII of the 1968 Civil Rights Act, 42 U.S.C. § 3604(b) and § 3617; and

    c.  Declare the Termination void *ab initio*, pursuant to 28 U.S.C. § 2201(a), and thereby rescind the Termination, and the totality of its provisions, signed by DELGADO and GOOD SAM on October 15, 2022; and

    d.  Declare GOOD SAM's actions to be exploitative of DELGADO as a vulnerable adult; and

    e.  Order that GOOD SAM take appropriate affirmative action to ensure that the activities complained of are not engaged in again by them or any of their agents; and

    f.  Permanently enjoin GOOD SAM, their agents, employees, and successors from discriminating on the basis of national origin against any person in violation of Title VIII of the Civil Rights Act of 1968;

g. Award appropriate punitive and compensatory damages to DELGADO against GOOD SAM; and

h. Award DELGADO attorney fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

i. Provide such further relief as this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Dated: June 23, 2023                    Respectfully submitted,

YOLANDA DELGADO

By and through her attorney:

/s/ Morgan Cardinal
**Morgan Cardinal, Esquire**
Florida Bar No. 117645
E-mail: morganc@clsmf.org
Secondary email: christopherk@clsmf.org
**Jeffrey Hussey, Esquire**
Florida Bar No. 845670
E-mail: jeffreyh@clsmf.org
Secondary email: jackiev@clsmf.org
122 E. Colonial Drive, Suite 200
Orlando, Florida 32801
Telephone: (407) 322-6279

18

**John J. Martino, Esquire**
Florida Bar No. 106093
1440 N Nova Road, Suite 101
Daytona Beach, FL 32117
Telephone: (386) 361-6674
E-mail: johnm@clsmf.org
Secondary email: sandrac@clsmf.org

Attorneys for Plaintiff



**Exhibit B**

Ian IL Form #1

## TERMINATION OF OCCUPANCY AGREEMENT AND ABANDONMENT OF PERSONAL PROPERTY AGREEMENT

THIS TERMINATION (this "Agreement") is made and entered into effective as of _October 15_, 2022 (the "Effective Date"), by and among _Yolanda Delgado_ and _____ (collectively, "Resident"), and The Evangelical Lutheran Good Samaritan Society d/b/a Good Samaritan Society – Kissimmee Village ("Society").

## RECITALS

WHEREAS, Resident and Society entered into an Occupancy Agreement for Unit _Unit 11_ (the _4163 Northgate Dr._ "Unit") at Society's campus in Kissimmee, FL; and

WHEREAS, due to extensive flooding and damage caused by Hurricane Ian, the parties desire to terminate the Occupancy Agreement, and Resident desire to abandon and surrender to Society all personal property (the "Property") in the Unit and at the Property.

NOW, THEREFORE, The parties agree as follows:

1. _Recitals._ The Recitals are hereby incorporated into and made part of this Agreement by reference.

2. _Termination of Occupancy Agreement._ Subject to the terms of this Agreement, the Occupancy Agreement is hereby terminated effective as of the last date of signature.

3. _Abandonment and Surrender of Property._ From the date of this Agreement, Resident shall have until October 31, 2022, to remove all Property at Resident's sole cost and expense. Thereafter, Resident does hereby transfer, release and abandon all right, title and interest in and to the Property to Society, and/or its employees and authorized agents, contractors, subcontractors, and representatives, including without limitation, Belfor USA Group, Inc. Resident further grants access to Society and/or its employees and authorized agents and representatives, including without limitation, Belfor USA Group, Inc., to the Unit to remove the Property in the Unit, including other damage from the Hurricane such as trees, limbs, aluminum, or other items damaged in the storm. All such removal shall be at Society's expense.

4. _Release._ Resident hereby remises, releases, and forever discharges, and by these presents for themselves, their assigns and successors, heirs, executors, and administrators, do forever discharge Society, its respective officers, directors, employees, agents, contractors, subcontractors, representatives (including, without limitation, Belfor USA Group, Inc.), attorneys, successors, and all related entities, of and from all claims, all manner of action and actions, cause and causes of action, type of actions, suit, debts, obligations, accounts, attomey's fees, costs, interest, dues, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, or claims and demands whatsoever, in law or in

1

Ian IL Form #1

equity, which Resident had, now have or which Resident or its assigns, successors, heirs, executors, or administrators, hereafter can, shall or may have from the beginning of the world to the date of this Agreement arising out of or related to the Property, disposal of the Property, the Unit, Occupancy Agreement, fees, security deposits, or Resident's use of the Unit.

   IN WITNESS WHEREOF, this Agreement is entered into and made effective as of the last date of signature.

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY

DATED: 10/15/2022

Authorized Agent

RESIDENT(S)

DATED: 10/15/2022

WITNESSES:

SIGNED BY:

Printed Name: Tamara Lund

Printed Name: Yolanda Delyn do

WITNESSES:

SIGNED BY:

Printed Name:_____

Printed Name:_____

2

Exhibit C

THE EVANGELICAL LUTHERAN
**Good
Samaritan
Society®**
*In Christ's Love, Everyone Is Someone.*

# Notice of Nondiscrimination and Accessibility Requirements

## Discrimination is Against the Law

The Evangelical Lutheran Good Samaritan Society (the Society) and Owner comply with applicable Federal civil rights laws and does not discriminate against any person on the grounds of race, color, national origin, disability, familial status, religion, sex, age, sexual orientation, gender identity, gender expression, veteran status or other protected statuses except as permitted by applicable law, in admission to, participation in, or receipt of the services and benefits under any of its programs and activities, and in staff and employee assignments to individuals, whether carried out by the Society directly or through a contractor or any other entity with which the Society arranges to carry out its programs and activities. The designated person responsible for coordinating efforts to comply with Section 504 requirements is: Director of Affordable Housing, Property Management, 4800 W. 57th Street, Sioux Falls, SD 57108; phone: (605) 362-3100. For telecommunications relay service dial 711. All faiths and beliefs are welcome.

The Society provides free aids and services to people with disabilities to communicate effectively with us, such as:

- Qualified sign language interpreters

- Written information in other formats such as large print,  electronic formats, other formats

- Free language services to people whose primary language is not English, such as qualified interpreters

- Information written in other languages

If you need these services, contact: Center for Solutions; **Call:** 1-877-447-7237, select option 3, then select option 6; **Fax:** 1-605-371-7205; **Email:** cfs@good-sam.com.

If you believe that the Society has failed to provide these services or discriminated in another way on the basis of race, color, national origin, disability, familial status, religion, sex, age, sexual orientation, gender identity, gender expression, veteran status or other protected statuses, you can file a grievance with: **Mail:** Corporate Compliance Officer, PO Box 5038, Sioux Falls, SD 57117; **Call:** 1-800-631-6142; **Call:** TTY 711; **Fax:** 1-605-362-3956; **Email:** cfs@good-sam.com.

You can file a grievance in person or by mail, fax, or email. If you need help filing a grievance, the Corporate Compliance Officer is available to help you.

You can also file a civil rights complaint with the U.S. Department of Health and Human Services, Office for Civil Rights, electronically through the Office for Civil Rights Complaint Portal, available at https://ocrportal.hhs.gov/ocr/portal/lobby.jsf, or by mail or phone at: **Mail:** U.S. Department of Health and Human Services, 200 Independence Avenue, SW Room 509F, HHH Building, Washington, D.C. 20201; **Call:** 1-800-368-1019; **Call:** 1-800-537-7697 (TDD). Complaint forms are available at http://www.hhs.gov/ocr/office/file/index.html.

© 2016 The Evangelical Lutheran Good Samaritan Society. All rights reserved. 16-G1099web



THE EVANGELICAL LUTHERAN
Good
Samaritan
Society®
In Christ's Love, Everyone Is Someone.

# Language assistance services

**Albanian**
KUJDES:  Nëse flitni shqip, për ju ka në dispozicion shërbime të asistencës gjuhësore, pa pagesë.  Telefononi në 1-866-477-5343.

**Amharic**
ማስታወሻ:  የሚናገሩት ቋንቋ አማርኛ ከሆነ የትርጉም እርዳታ ድርጅቶች፣ በነጻ ሊያግዝዎት ተዘጋጀተዋል፡ ወደ ሚከተለው ቁጥር ይደውሉ 1-866-477-5343.

**Bantu/Kirundi**
ICITONDERWA:  Nimba uvuga Ikirundi, uzohabwa serivisi zo gufasha mu ndimi, ku buntu.  Woterefona 1-866-477-5343.

**Bisayan**
ATENSYON:  Kung nagsulti ka og Cebuano, aduna kay magamit nga mga serbisyo sa tabang sa lengguwahe, nga walay bayad.  Tawag sa 1-866-477-5343.

**Burmese**
သင်ကြိုရန် - အကယ်၍ သင်သည် မြန်မာစကား ကို ပြောပါက၊ ဘာသာစကား အကူအညီ၊ အခမဲ့၊ သင့်အတွက် စီစဉ်ဆောင်ရွက်ပေးပါမည်။ ဖုန်းနံပါတ် 1-866-477-5343 သို့ ခေါ်ဆိုပါ။

**Chinese**
注意：如果您使用繁體中文，您可以免費獲得語言援助服務。請致電 1-866-477-5343 。

**Cushite/Oromo**
XIYYEEFFANNAA: Afaan dubbattu Oroomiffa, tajaajila gargaarsa afaanii, kanfaltiidhaan ala, ni argama.  Bilbilaa 1-866-477-5343.

**Dutch**
AANDACHT:  Als u nederlands spreekt, kunt u gratis gebruikmaken van de taalkundige diensten.  Bel 1-866-477-5343.

**French**
ATTENTION :  Si vous parlez français, des services d'aide linguistique vous sont proposés gratuitement.  Appelez le 1-866-477-5343.

**French Creole/Haitian Creole**
ATANSYON:  Si w pale Kreyòl Ayisyen, gen sèvis èd pou lang ki disponib gratis pou ou.  Rele 1-866-477-5343.

**German**
ACHTUNG:  Wenn Sie Deutsch sprechen, stehen Ihnen kostenlos sprachliche Hilfsdienstleistungen zur Verfügung.  Rufnummer: 1-866-477-5343.

**Greek**
ΠΡΟΣΟΧΗ: Αν μιλάτε ελληνικά, στη διάθεσή σας βρίσκονται υπηρεσίες γλωσσικής υποστήριξης, οι οποίες παρέχονται δωρεάν. Καλέστε 1-866-477-5343.

**Gujarati**
સુચના: જો તમે ગુજરાતી બોલતા હો, તો નિ:શુલ્ક ભાષા સહાય સેવાઓ તમારા માટે ઉપલબ્ધ છે. ફોન કરો 1-866-477-5343.

**Hawaiian**
E NĀNĀ MAI:  Inā hoʻopuka ʻoe i ka ʻōlelo [hoʻokomo ʻōlelo], loaʻa ke kōkua manuahi iā ʻoe. E kelepona iā 1-866-477-5343.

**Hindi**
ध्यान दें:  यदि आप हिंदी बोलते हैं तो आपके लिए मुफ्त में भाषा सहायता सेवाएं उपलब्ध हैं। 1-866-477-5343 पर कॉल करें।

**Hmong**
LUS CEEV:  Yog tias koj hais lus Hmoob, cov kev pab txog lus, muaj kev pab dawb rau koj.  Hu rau 1-866-477-5343.

**Ibo**
Ntị: Ọ bụrụ na asụ Ibo, asụsụ aka ọasụ n'efu, defu, aka.  Call 1-866-477-5343.

**Ilocano**
PAKDAAR:  Nu saritaem ti Ilocano, ti serbisyo para ti baddang ti lengguahe nga awanan bayadna, ket sidadaan para kenyam.  Awagan ti 1-866-477-5343.

**Italian**
ATTENZIONE:  In caso la lingua parlata sia l'italiano, sono disponibili servizi di assistenza linguistica gratuiti.  Chiamare il numero 1-866-477-5343.

© 2016 The Evangelical Lutheran Good Samaritan Society. All rights reserved. 16-G1099web



# Language assistance services (continued)

**Japanese**
注意事項：日本語を話される場合、無料の言語支援
をご利用いただけます。1-866-477-5343 まで、お
電話にてご連絡ください。

**Karen**
ဟ်သူၣ်ဟ်သး–နမ့်ၢ်ကတိၤ ကညီ ကျိာ်အယိ, နမၤန့ၢ်
ကျိာ်အတၢ်မၤစၢၤလၢ တလၢာ်ဘူၣ်လၢာ်စ့ၤ နီတမံၤဘၣ်သ့ၣ်လီၤ. ကိး
1-866-477-5343.

**Korean**
주의: 한국어를 사용하시는 경우, 언어 지원
서비스를 무료로 이용하실 수 있습니다.
1-866-477-5343 번으로 전화해 주십시오.

**Kru/Bassa**
Dè ɖɛ nìà kɛ dyéɖé gbo: Ɔ jǔ ké m̀ [Ɓàsɔ́ɔ̀-wùɖù-po-nyɔ̀]
jǔ ní, nìí, à wuɖu kà kò ɖò po-poɔ̀ ɓɛ́ìn m̀ gbo kpáa. Đá
1-866-477-5343.

**Laotian**
ໂປດຊາບ: ຖ້າວ່າ ທ່ານເວົ້າພາສາ ລາວ,
ການບໍລິການຊ່ວຍເຫຼືອດ້ານພາສາ, ໂດຍບໍ່ເສັງຄ່າ,
ແມ່ນມີພ້ອມໃຫ້ທ່ານ. ໂທຣ 1-866-477-5343.

**Marshallese**
LALE: Ñe kwōj kōnono Kajin M̧ajōḷ, kwomaroñ bōk
jerbal in jipañ ilo kajin ņe aṃ ejjeḷọk wōņāān. Kaalọk
1-866-477-5343.

**Micronesian/Pohnpeian**
Ni songen mwohmw ohte, komw pahn sohte anahne
kawehwe mesen nting me koatoantoal kan ahpw wasa
me ntingie [Lokaiahn Pohnpei] komw kalangan oh
ntingidieng ni lokaiahn Pohnpei.

Call 1-866-477-5343.

**Mon-Khmer/Cambodian**
ប្រយ័ត្ន៖ បើសិនជាអ្នកនិយាយ ភាសាខ្មែរ,
សេវាជំនួយផ្នែកភាសា ដោយមិនគិតឈ្នួល
គឺអាចមានសំរាប់បំរើអ្នក។ ចូរ ទូរស័ព្ទ 1-866-477-5343។

**Navajo**
Díí baa akó nínízin: Díí saad bee yáníłti'go Diné Bizaad,
saad bee áká'ánída'áwo'déé', t'áá jiik'eh, éí ná hóló,
koji' hódíílnih 1-866-477-5343.

**Nepali**
ध्यान दिनुहोस्: तपाईंले नेपाली बोल्नुहुन्छ भने तपाईंको निम्ति
भाषा सहायता सेवाहरू निःशुल्क रूपमा उपलब्ध छ । फोन गर्नुहोस्
1-866-477-5343 ।

**Norwegian**
MERK:  Hvis du snakker norsk, er gratis
språkassistansetjenester tilgjengelige for deg.  Ring
1-866-477-5343.

**Panjabi**
ਧਿਆਨ ਦਿਓ: ਜੇ ਤੁਸੀਂ ਪੰਜਾਬੀ ਬੋਲਦੇ ਹੋ, ਤਾਂ ਭਾਸ਼ਾ ਵਿੱਚ ਸਹਾਇਤਾ
ਸੇਵਾ ਤੁਹਾਡੇ ਲਈ ਮੁਫਤ ਉਪਲਬਧ ਹੈ। 1-866-477-5343 'ਤੇ
ਕਾਲ ਕਰੋ।

**Pennsylvania Dutch**
Wann du [Deitsch (Pennsylvania German / Dutch)]
schwetzscht, kannscht du mitaus Koschte ebber gricke,
ass dihr helft mit die englisch Schprooch. Ruf selli
Nummer uff: Call 1-866-477-5343.

**Polish**
UWAGA:  Jeżeli mówisz po polsku, możesz skorzystać
z bezpłatnej pomocy językowej.  Zadzwoń pod numer
1-866-477-5343.

**Portuguese**
ATENÇÃO:  Se fala português, encontram-se disponíveis
serviços linguísticos, grátis.  Ligue para 1-866-477-5343.

**Romanian**
ATENȚIE:  Dacă vorbiți limba română, vă stau la
dispoziție servicii de asistență lingvistică, gratuit.  Sunați
la 1-866-477-5343.

**Russian**
ВНИМАНИЕ:  Если вы говорите на русском языке, то
вам доступны бесплатные услуги перевода.  Звоните
1-866-477-5343.

© 2016 The Evangelical Lutheran Good Samaritan Society. All rights reserved. 16-G1099web



# Language assistance services (continued)

**Samoan**

MO LOU SILAFIA: Afai e te tautala  Gagana fa'a Sāmoa, o loo iai auaunaga  fesoasoan, e fai fua e leai se totogi, mo oe, Telefoni mai: 1-866-477-5343.

**Serbo-Croation/Serbian**

OBAVJEŠTENJE:  Ako govorite srpsko-hrvatski, usluge jezičke pomoći dostupne su vam besplatno.  Nazovite 1-866-477-5343.

**Spanish**

ATENCIÓN:  si habla español, tiene a su disposición servicios gratuitos de asistencia lingüística.  Llame al 1-866-477-5343.

**Sudanic/Fulfulde**

MAANDO: To a waawi [Adamawa], e woodi ballooji-ma to ekkitaaki wolde caahu. Noddu 1-866-477-5343.

**Swahili**

KUMBUKA: Ikiwa unazungumza Kiswahili, unaweza kupata, huduma za lugha, bila malipo.  Piga simu 1-866-477-5343.

**Tagalog/Filipino**

PAUNAWA:  Kung nagsasalita ka ng Tagalog, maaari kang gumamit ng mga serbisyo ng tulong sa wika nang walang bayad.  Tumawag sa 1-866-477-5343.

**Thai**

เรียน: ถ้าคุณพูดภาษาไทยคุณสามารถใช้บริการช่วยเหลือทางภาษาได้ฟรี  โทร 1-866-477-5343.

**Tongan**

FAKATOKANGA'I:  Kapau 'oku ke Lea-Fakatonga, ko e kau tokoni fakatonu lea 'oku nau fai atu ha tokoni ta'etotongi, pea teke lava 'o ma'u ia.  Telefoni mai 1-866-477-5343.

**Trukese**

MEI AUCHEA:  Ika iei foosun fonuomw: Foosun Chuuk, iwe en mei tongeni omw kopwe angei aninisin chiakku, ese kamo.  Kori 1-866-477-5343.

**Ukrainian**

УВАГА!  Якщо ви розмовляєте українською мовою, ви можете звернутися до безкоштовної служби мовної підтримки.  Телефонуйте за номером 1-866-477-5343.

**Vietnamese**

CHÚ Ý:  Nếu bạn nói Tiếng Việt, có các dịch vụ hỗ trợ ngôn ngữ miễn phí dành cho bạn.  Gọi số 1-866-477-5343.

**Yoruba**

AKIYESI: Bi o ba nsọ èdè Yorùbú ọfé ni iranlọwọ lori èdè wa fun yin o. Ẹ pe ẹrọ-ibanisọrọ yi 1-866-477-5343.

**Arabic**

ملحوظة:  إذا كنت تتحدث اذكر اللغة، فإن خدمات المساعدة اللغوية تتوافر لك بالمجان.  اتصل برقم 5343-477-866-1.

**Kurdish**

ناگاداری:  ئەگەر بە زمانی کوردی قسە دەکەیت، خزمەتگوزاریەکانی یارمەتی زمان، بەخۆرایی، بۆ تو بەردەستە.  پەیوەندی بە 1-866-477-5343 بکە.

**Persian/Farsi**

توجه: اگر به زبان فارسی گفتگو می کنید، تسهیلات زبانی بصورت رایگان برای شما فراهم می باشد. با 1-866-477-5343  تماس بگیرید.

**Syriac/Assyrian**

ܐܘܗܕܵܢܵܐ: ܐܹܢ ܐܲܚܬܘܿܢ ܟܹܐ ܗܲܡܙܸܡܝܼܬܘܿܢ ܠܸܫܵܢܵܐ ܐܵܬܘܿܪܵܝܵܐ، ܟܹܐ ܒܹܬ ܗܵܘܹܝܠܵܘܟ݂ܘܿܢ ܚܸܠܡܲܬܹ̈ܐ ܝܲܗܒ݂ܠܬܵܐ ܡܲܓܵܢܵܐܝܼܬ. ܩܪܘܿܢ ܥܲܠ ܡܸܢܝܵܢܵܐ.

1-866-477-5343

**Urdu**

خبردار: اگر آپ اردو بولتے ہیں، تو آپ کو زبان کی مدد کی خدمات مفت میں دستیاب ہیں ۔ کال کریں 1-866-477-5343.

© 2016 The Evangelical Lutheran Good Samaritan Society. All rights reserved. 16-G1099web