UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

YOLANDO DELGADO,

    Plaintiff,

v.                                              Case No. 6:23-cv-1288-RBD-NWH

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY; and
SANFORD GROUP,

    Defendants.
_____

## ORDER

Before the Court are the parties' cross-motions for summary judgment. (Docs. 54–56.) Defendants' motions are due to be granted.

### BACKGROUND

This Fair Housing Act case arises out of flooding in central Florida in 2022 in the aftermath of Hurricane Ian.

Plaintiff, a seventy-seven-year-old Puerto Rican woman who does not speak English, lived at Kissimmee Village ("Village"), a senior residential community owned by Defendant The Evangelical Lutheran Good Samaritan Society ("Good Sam"). (Doc. 56-3, p. 1; Doc. 56-20, pp. 8:11, 10:11–12, 11:3–7, 13:23–14:18; Doc. 56-22, p. 12:19–20.) Ahead of Hurricane Ian, Good Sam evacuated the Village, and Plaintiff sheltered with her daughter. (Doc. 56-10; Doc. 56-20, pp. 13:11–18,

60:15.) When she returned to the Village after the storm, she found her apartment and belongings destroyed. (Doc. 56-20, pp. 62:13–63:3.)

Plaintiff and her daughter then went to a large room on the property that Good Sam set up for residents who were affected by the storm. (*Id.* at 67:13–14; Doc. 56-23, p. 22:13–19.) Plaintiff and her daughter, who is bilingual, met with a Good Sam representative, who spoke to them in English. (Doc. 56-20, p. 67:13–17; Doc. 56-22, pp. 8:12–14, 44:18–45:3.) Plaintiff's daughter translated for her. (Doc. 56-20, p. 74:10–20.) While Spanish translators were available, one was not offered or requested. (*Id.* at 73:9–13; Doc. 56-22, pp. 47:14–17, 48:14–49:4; Doc. 56-23, pp. 23:6–24:15.) The representative explained that Plaintiff's apartment would not be repaired, which upset her. (Doc. 56-19; Doc. 56-22, pp. 47:25–48:6, 50:8–10.)

The representative then showed Plaintiff and her daughter an agreement that would immediately terminate Plaintiff's lease ("Termination"). (Doc. 56-12; *see* Doc. 56-20, p. 79:23–24.) The Termination is a two-page document printed on a single double-sided sheet of paper. (Doc. 56-20, p. 75:3–8; Doc. 56-22, p. 51:1–7.) The representative said if Plaintiff signed it, Good Sam would return her security deposit faster. (Doc. 56-22, p. 48:7–10; *see* Doc. 56-12.) Otherwise, Good Sam would return her deposit after giving the thirty-day notice of termination required by the lease. (Doc. 56-22, p. 48:10–26; *see* Doc. 56-3, pp. 2–3.) The representative did not explain any other terms, which included a broad release for Good Sam and related

2

entities from "all claims . . . arising out of or related to the Property, disposal of the Property, the Unit, Occupancy Agreement, fees, security deposits, or Resident's use of the Unit." (Doc. 56-12, ¶ 4; *see* Doc. 56-22, pp. 51:13–52:15.)

Plaintiff's daughter recalled that the meeting lasted about thirty minutes, and she translated the representative's every word, which Plaintiff understood. (Doc. 56-22, pp. 48:22–49:1, 54:19–20, 67:7–9.) On the other hand, Plaintiff recalled feeling rushed; she thought her daughter asked for more time to review the Termination and was told no. (Doc. 56-20, pp. 77:6–78:2.) Plaintiff says she first thought the Termination was an agreement for a replacement apartment; she did not understand what was happening, she did not think she could ask questions, and she felt pressured to sign because the representative "continued to point at the signature line." (Doc. 56-2, ¶¶ 14–20.) Plaintiff believes the meeting lasted only five minutes, and she thought she had to either sign the Termination or lose her deposit entirely. (*Id.* ¶ 19; Doc. 56-20, pp. 74:2–76:5, 77:5.)

Ultimately, Plaintiff signed the Termination without reading it or having her daughter read it to her. (Doc. 56-20, pp. 76:23–24, 78:6–9; Doc. 56-22, pp. 52:3–9, 54:1–8.) She received her deposit back two weeks later. (Doc. 56-12, p. 3.) Residents who did not sign a Termination received notice under their leases and collected their deposits about six weeks later. (Docs. 56-18, 56-19.) Plaintiff wanted to continue living at the Village, but the only apartment Good Sam offered her was

3

more expensive, so she bought a house instead. (Doc. 56-22, pp. 63:4–65:5, 66:19–67:2; Doc. 56-20, pp. 26:6–25.)

Plaintiff then sued Good Sam and its parent company, Defendant Sanford Group ("Sanford") for: (1) violations of the Fair Housing Act ("FHA") under 42 U.S.C. §§ 3604(b) and 3617; (2) declaratory relief under 28 U.S.C. § 2201(a), seeking rescission; and (3) exploitation of a vulnerable adult under state law. (Doc. 45.) The parties filed cross-motions for summary judgment. (Docs. 54–56.) Defendants requested that the Court take judicial notice of related cases.[1] (Doc. 51.) The parties also moved to exclude each other's experts.[2] (Docs. 53, 57–58.) The matters are ripe.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). When

---

[1] Good Sam and Sanford jointly asked the Court to take judicial notice of similar ongoing cases in which Good Sam is a party. (Doc. 51.) The Court will take judicial notice of the existence of the cases listed but not of the truth of any allegations within them. (*See* Docs. 51-1 to 51-25); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

[2] Both sides move to exclude the other's culture experts. (Docs. 53, 57, 58.) Jurors can evaluate these types of issues without experts, so they are unhelpful and the Court would not put them before a jury. *See Doe v. Rollins Coll.*, 77 F.4th 1340, 1349–50 (11th Cir. 2023); *Barrueto v. Fernandez Larios*, No. 99-0528-civ, 2003 WL 25782075, at *6 n.9 (S.D. Fla. Sept. 18, 2003); *cf. United States v. Castaneda*, 94 F.3d 592, 595–96 (9th Cir. 1996). But because the Court is granting summary judgment, the motions are moot.

considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). But the court does not have to accept the non-movant's factual characterizations and legal arguments. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994). The court must ultimately decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## ANALYSIS

Good Sam argues that it is entitled to summary judgment because Plaintiff's claims are barred by the Termination's release. (Doc. 56, p. 24.) Plaintiff counters that the Termination is void or unenforceable. (Doc. 56, pp. 18–20; Doc. 65, p. 12.)

First, Plaintiff argues that the Termination is void because it offends public policy. (Doc. 56, p. 25; Doc. 65, p. 12.) To be void, a contract must "clearly violate public policy" by harming the general public, not just the party to the contract. *New Testament Baptist Church Inc. of Mia. v. State, Dep't of Transp.*, 993 So. 2d 112, 116 (Fla. 4th DCA 2008). Although public policy favors fairness in housing, Florida also recognizes "a strong public policy favoring freedom of contract." *City of Largo v. AHF-Bay Fund, LLC*, 215 So. 3d 10, 16 (Fla. 2017). Only exceptional circumstances warrant court intervention into that freedom. *Id.* Here, the release is limited to

Plaintiff and her apartment; it does not free Good Sam of its obligation to follow fair housing and contract law generally or indefinitely. (Doc. 56-12, ¶ 4); *see Warner v. Sch. Bd. of Hillsborough Cnty.*, No. 8:23-cv-181, 2025 WL 1297128, at *9 (M.D. Fla. Jan. 14, 2025) (applying Florida law) (enforcing settlement agreement releasing plaintiff's claims including FHA claim); *cf. Moore v. Camden Prop. Tr.*, 816 F. App'x 324, 332–33 (11th Cir. 2020) (applying Georgia law) (affirming dismissal of FHA claim released via settlement agreement). So the release does not constitute an exceptional circumstance contravening public policy and is not void *ab initio*. *See Largo*, 215 So. 3d at 16.

Second, Plaintiff argues that the Termination is not supported by sufficient consideration. (Doc. 56, pp. 19–20; Doc. 65, p. 12.) Consideration may be any exchange of promises, as long as the promise is something the promisor did not have to do. *Diaz v. Rood*, 851 So. 2d 843, 846 (Fla. 2d DCA 2003). By executing the Termination, both Plaintiff and Good Sam opted out of the notice required to terminate the lease, giving Plaintiff a faster return of her deposit and Good Sam a faster surrender of Plaintiff's apartment. (Docs. 56-12, 56-18, 56-19.) This exchange is sufficient consideration to support the Termination. *See Diaz*, 851 So. 2d at 846; *Warner*, 2025 WL 1297128, at *8.

Third, Plaintiff argues that the Termination is unenforceable because she did not know what she was signing. (Doc. 56, pp. 18–19; Doc. 65, p. 12.) Plaintiff argues

that Good Sam misrepresented or failed to explain the material terms of the Termination, especially as Good Sam did not offer Plaintiff a translator or a Spanish version. (*Id.*) Good Sam counters that it was Plaintiff's burden to ensure she understood the Termination before signing it. (Doc. 63, pp. 13–14; Doc. 70, pp. 6–7.) A person who signs a contract bears the burden "to learn and know the contents of a contract before [s]he signs and delivers it." *Pepple v. Rogers*, 140 So. 205, 208 (Fla. 1932). So "the failure to review and read a contract prior to its execution is not a defense against its application." *Santana v. Miller*, 314 So. 3d 346, 349 (Fla. 3d DCA 2020). This rule extends to those without the ability to read the contract. *See id.* at 349–50 (valid contract when non-English speaking plaintiff signed release in English); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 313 (Fla. 5th DCA 1985) (valid contract when illiterate plaintiff did not request documents be read to her before signing). The lone exception occurs when the signatory shows that she "was prevented from reading the contract, or that [s]he was induced by statements of the other party to refrain from reading the contract." *Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347–48 (Fla. 1977). Here, although Plaintiff did not understand the terms of the Termination, it was Plaintiff's responsibility to know what she was signing, and her choice to trust Good Sam and her daughter does not now relieve her of the fact that she agreed to the Termination and is bound by its terms. *See Merrill, Lynch*, 467 So. 2d at 313;

*Spring Lake NC, LLC v. Holloway*, 110 So. 3d 916, 918 (Fla. 2d DCA 2013) (inability to understand terms of retirement home contract did not make it unenforceable). Crediting Plaintiff's sense of pressure to sign; nothing in the record shows that the Good Sam representative unlawfully induced her to sign the Termination or prevented her daughter from reading or translating it. *See Santana*, 314 So. 3d at 350. So Plaintiff is bound by her signature.[3]

Finally, Plaintiff argues that Good Sam applied so much financial pressure to Plaintiff—who was already stressed because of the hurricane—that she signed the Termination under duress. (Doc. 56, p. 19; Doc. 65, p. 12.) For a person to have signed a contract under duress, she must have been so constrained as to "prevent the exercise of free will." *Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla. 3d DCA 2007). Consent obtained by the financial pressure of the situation is not enough to show duress. *Cableview Commc'ns of Jack., Inc. v. Time Warner Cable Se., LLC*, No. 3:13-cv-306, 2017 WL 5240208, at *16 (M.D. Fla. Jan. 4, 2017), *aff'd*, 901 F.3d 1294 (11th Cir. 2018) (applying Florida law). Although Plaintiff felt the strain of losing her apartment, there is no evidence that Good Sam forced her hand

---

[3] Plaintiff also argues that the language of the release must be clear and unambiguous, and because she could not understand the contract as it was written in English, the release is unclear. (Doc. 56, pp. 18–19.) But Plaintiff's argument confuses the law—although the release language itself must be clear, clarity is evaluated by an "ordinary and knowledgeable person" standard, not the subjective standard of the mind of the signatory. *Cain v Banka*, 932 So. 2d 575, 578 (Fla. 5th DCA 2006); *see, e.g.*, *Hold v. Manzini*, 736 So. 2d 138, 141–42 (Fla. 3d DCA 1999) (finding similar release language clear and unambiguous).

or gave her no other choice—Plaintiff's daughter understood and translated for Plaintiff that the Termination would only provide the deposit *quicker*. (Doc. 56-22, pp. 48:7–49:4); *cf. Bhushan v. Loma Alta Towers Owner's Ass'n, Inc.*, 148 F. App'x 882, 886–87 (11th Cir. 2005) (applying Alabama law) (no economic duress when condo association required plaintiff to sign release before closing on condo where alternative was large payment). As the record does not support Plaintiff's contention that she signed under duress, this argument fails.

Having resolved Plaintiff's arguments against enforceability, the Court must interpret the clear and unambiguous language of the Termination according to its plain meaning. *Santana*, 314 So. 3d at 348; *Hold v. Manzini*, 736 So. 2d 138, 141–42 (Fla. 3d DCA 1999). The release encompasses "all claims" against Good Sam and "all related entities," so all of Plaintiff's claims against both Good Sam and Sanford are barred. (Doc. 56-12); *Warner*, 2025 WL 1297128, at *4–5. Because Plaintiff released her claims, summary judgment is due to be granted for Defendants.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendants' motions for summary judgment (Docs. 54, 55) are **GRANTED**.

2. Plaintiff's motion for summary judgment (Doc. 56) is **DENIED**.

9

3. Defendants' motion for judicial notice (Docs. 51) is **GRANTED**.

4. Plaintiff's and Defendants' motions to exclude experts (Docs. 53, 57, 58) are **DENIED AS MOOT**.

5. The Clerk is **DIRECTED** to enter judgment for Defendants and against Plaintiff, terminate all other pending motions as moot, cancel upcoming hearings, and close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 5, 2025.



ROY B. DALTON, JR.
United States District Judge